IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| NYANA HARDIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. |
|  | ) | 16-0356-CV-W-REL-SSA |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Nyana Hardin seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title XVI of the Social Security Act ("the Act"). Plaintiff argues that the ALJ erred in (1) finding plaintiff's limited intellectual abilities and depression are not severe impairments, (2) finding that plaintiff's mental impairments do not meet or equal the requirements of listing 12.05(c) (mental retardation), and (3) failing to make a function-by-function analysis of plaintiff's physical residual functional capacity. I find that the substantial evidence in the record as a whole does not support the ALJ's finding that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be granted, the decision of the Commissioner will be reversed, and this case will be remanded for an award of benefits.

*I.*   ***BACKGROUND***

On October 1, 2013, plaintiff applied for disability benefits alleging that she had been disabled since January 1, 2011. Plaintiff's application was denied on November

13, 2013. On December 17, 2014, a hearing was held before an Administrative Law Judge. On January 13, 2015, the ALJ found that plaintiff was not under a "disability" as defined in the Act. On March 22, 2016, the Appeals Council denied plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II. STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

### III.    BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These

regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

    1.    Is the claimant performing substantial gainful activity?

           Yes = not disabled.
           No = go to next step.

    2.    Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

           No = not disabled.
           Yes = go to next step.

    3.    Does the impairment meet or equal a listed impairment in Appendix 1?

           Yes = disabled.
           No = go to next step.

    4.    Does the impairment prevent the claimant from doing past relevant work?

           No = not disabled.
           Yes = go to next step where burden shifts to Commissioner.

    5.    Does the impairment prevent the claimant from doing any other work?

           Yes = disabled.
           No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff and documentary evidence admitted at the hearing.

### A. ADMINISTRATIVE REPORTS

The record contains the following administrative reports:

**Earnings Record**

The record shows that plaintiff earned the following income from 1991 through 2014:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|
| 1991 | $ 2,804.58 | 2003 | $ 11,305.44 |
| 1992 | 11,827.29 | 2004 | 0.00 |
| 1993 | 5,195.32 | 2005 | 0.00 |
| 1994 | 8,215.50 | 2006 | 0.00 |
| 1995 | 10,146.19 | 2007 | 0.00 |
| 1996 | 2,496.00 | 2008 | 0.00 |
| 1997 | 12,758.91 | 2009 | 0.00 |
| 1998 | 5,405.38 | 2010 | 0.00 |
| 1999 | 8,474.89 | 2011 | 0.00 |
| 2000 | 14,645.36 | 2012 | 0.00 |
| 2001 | 16,425.46 | 2013 | 0.00 |
| 2002 | 14,972.00 | 2014 | 0.00 |

(Tr. at 122).

**Work History Report**

In a Work History Report, plaintiff reported that she previously worked as a child care assistant (6 hours per day, 5 days per week for $8.50 per hour), a janitor (4 hours per day, 5 days per week for $6.00 per hour), and as a warehouse worker (7 hours per day, 5 days per week for $7.00 per hour) (Tr. at 132-135). When working in child care,

plaintiff walked 2 hours per day and stood 2 hours per day (Tr. at 154).  She sat most of the day and lifted less than 10 pounds (Tr. at 154).  When she worked as a janitor, she emptied office trash, dusted and vacuumed until her back started hurting (Tr. at 155).  As a warehouse worker, she picked up small toys and put them into boxes (Tr. at 156).

**Function Report**

In a Function Report plaintiff indicated that her son does most of the shopping, that she may go once or twice a month for 20 minutes (Tr. at 175).  She talks to her family members on the phone and they come over most days to check on her and help her out (Tr. at 176).  Two to three times a month, someone will come over and pick her up, just to get her out of the house (Tr. at 176).  Plaintiff reported both that she can go out alone and that she needs someone to go with her when she leaves her home (Tr. at 175, 176).

Plaintiff's condition (especially the rod in her back) impacts her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks (Tr. at 177).  Plaintiff uses a cane and a brace (Tr. at 178).

**Function Report - Third Party**

Plaintiff completed this form herself, indicating both that she was completing it and that it was about her own condition (Tr. at 188-194).

**School Records**

Plaintiff's elementary school records include the following comments by her teachers: "Tries hard.  Very immature and shy.  Has not made much progress.  Still in the extended readiness stage."  "A very quiet worker.  Seems very shy. Tries hard."

"Tries hard but very slow." "Very slow but she does her best." Plaintiff's verbal IQ was 70, her non-verbal IQ was 85, and her average IQ was 78 (Tr. at 227-228).

## B.  SUMMARY OF TESTIMONY

During the December 17, 2014, hearing, plaintiff testified as follows.

At the time of the hearing, plaintiff was 52 years of age and is currently 55 (Tr. at 25). Plaintiff went to school through the 11th grade and never got a GED (Tr. at 25). She was in special education classes for all of her classes (Tr. at 35). Plaintiff has never had a driver's license (Tr. at 26). Plaintiff is not married (Tr. at 25). She and her 18-year-old son live together (Tr. at 25-26).

Plaintiff cannot work because she has a lot of pain in her back and legs, especially when she stands (Tr. at 27). She cannot stand for longer than 10 or 15 minutes before having pain (Tr. at 28). She has a lot of trouble with stairs (Tr. at 36). Plaintiff has bad days about three times a week when she cannot get out of bed (Tr. at 28). She is unsure whether that is entirely because of her back pain or if it is because of her depression (Tr. at 29). Even on days when plaintiff can get out of bed, she lies down during the day for relief (Tr. at 29). Plaintiff takes pain medication regularly (Tr. at 30).

Plaintiff suffers from migraine headaches a couple times a week (Tr. at 30-31). She has to lie down during a migraine, and light exacerbates her pain so she has to close the curtains (Tr. at 31).

Plaintiff has a lot of crying spells, sometimes every day (Tr. at 32). She has problems with memory and concentration (Tr. at 32). She does not read magazines

7

because she is not a very good reader (Tr. at 32). She rarely watches television (Tr. at 33). She does not like to be around people because it throws her off (Tr. at 33). Plaintiff showers every day but she rarely leaves her home (Tr. at 33). Her son reminds her to take her medication (Tr. at 33).

Plaintiff has trouble sleeping and takes medicine for that (Tr. at 33). Sometimes the medicine works and she is able to sleep, but not all the time (Tr. at 34). She usually gets around 4 hours of sleep a night; she does not take naps (Tr. at 34). Her energy level is low -- sometimes she just lies there and does not move (Tr. at 34).

Plaintiff can do simple math (Tr. at 35). She needed help completing the Social Security paperwork, and she has always needed help with job applications (Tr. at 35). Plaintiff's sister has always gone with her to fill out job applications, and she explained to potential employers that she was not a good reader (Tr. at 36).

Plaintiff can do some simple cooking, but she cannot read directions or recipes (Tr. at 36-37). When she cleans, she has to stop for breaks every 15 to 20 minutes (Tr. at 37). She needs to rest for an hour or two before she can get back to cleaning (Tr. at 37). Plaintiff's son does the laundry because it's in the basement (Tr. at 37). The grocery shopping is done by plaintiff's son or her sister (Tr. at 37). Plaintiff does not feel right at the grocery store -- it's either panic or nervousness (Tr. at 37-38).

Plaintiff's medications do not cause side effects (Tr. at 38). On a typical day she stays in bed most of the time but she tries to make herself sit up as much as possible because she does not want to get too lazy (Tr. at 38). Plaintiff does not use computers (Tr. at 38). If she has to leave her home and has no one to take her, she walks (Tr. at

8

38).  She leaves two or three hours before she has to be somewhere so she can rest, even though she lives in the city center and most things are close by (Tr. at 38). Plaintiff does not attend church, even though she needs to (Tr. at 38). When plaintiff's son was in school, she was not able to attend any of his school activities (Tr. at 39).

Plaintiff previously worked at a day care (Tr. at 39).

Plaintiff was having a hard time understanding questions and answering coherently during the hearing, and the ALJ instructed counsel to lead in order to get the information in the record (Tr. at 32).  She indicated during the hearing that she was nervous (Tr. at 38).

Although the vocational expert did not wind up testifying at the hearing, he presented the ALJ with a memorandum which included the requirements for child care worker according to the Dictionary of Occupational Titles (semi-skilled with an SVP of 4) (Tr. at 229).

## V. *FINDINGS OF THE ALJ*

Administrative Law Judge Michael Shilling entered his opinion on January 13, 2015 (Tr. at 8-16).

Step one.  Plaintiff has not engaged in substantial gainful activity since October 1, 2013, the day she filed her application (Tr. at 10).

Step two.  Plaintiff has the following severe impairments -- scoliosis of the thoracic spine, degenerative disc disease of the lumbar spine, and degenerative joint disease of the lumbar spine (Tr. at 10).  Plaintiff's depression is not severe (Tr. at 10-11).

Step three. Plaintiff's back impairments do not meet or equal a listed impairment (Tr. at 12).

Step four. Plaintiff retains the residual functional capacity to perform the full range of light work (Tr. at 12). With this residual functional capacity plaintiff can return to her past relevant work as a child care center worker (Tr. at 15).

Step five. Alternatively, the ALJ found that plaintiff can perform the full range of light work and therefore is capable of making a successful adjustment to other jobs available in significant numbers (Tr. at 16).

## *VI.    SEVERE IMPAIRMENTS*

Plaintiff argues that the ALJ erred in finding that plaintiff's limited intellectual abilities[1] and depression are not severe impairments.

A severe impairment is an impairment or combination of impairments which significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The regulations, at 20 C.F.R. § 404.1521, define a non-severe impairment.

>   (a)   Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
>   (b)   Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--

---

[1] The ALJ did not find that plaintiff's limited intellectual functioning is a nonsevere impairment; the ALJ did not address this impairment.

10

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

The ALJ, in finding that plaintiff has no severe mental impairment, stated as follows:

> The claimant's medically determinable mental impairments of depression considered single and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> The claimant has sought medication management and therapy to treat her depression. . . . Although she has received some treatment, she has never been noted to have any limitations in her mental health function. . . . In May 2014, she was again not noted to exhibit any deficits in her mental health functioning. This evidence indicates that her depression is non-severe. . . .
>
> . . . [T]he undersigned gives substantial weight to the opinions of the State agency psychological consultant on this issue because they are consistent with the medical records in evidence.

(Tr. at 10-11).

The ALJ did not mention plaintiff's IQ scores or the fact that she was in special education and did not complete high school.

I find that the evidence in the record establishes that plaintiff's ability to perform basic work activities was significantly limited by her mental impairments.

11

Plaintiff's IQ scores place her in at least the borderline range of intellectual functioning, with a verbal IQ of 70 and an overall IQ of 78.  She has an 11th grade special education and never received a GED.  She testified that she is unable to comprehend a newspaper article and cannot follow a recipe.  She does not drive and has never obtained a driver's license.  During the administrative hearing, plaintiff was clearly having a hard time understanding the questions and answering coherently, and the ALJ had to instruct counsel to lead in order to get the information in the record.

In addition, the notes from plaintiff's caseworkers contradict the ALJ's finding that plaintiff's limited intellectual abilities and symptoms of depression are not severe.  The record establishes that plaintiff and her son were homeless for a time.  A caseworker noted that she had to assist plaintiff with "finding an apartment due to cognitive confusion and poor communication skills." (Tr. at 379).  Plaintiff was unable to read the apartment applications well enough to fill them out by herself (Tr. at 380).  In caseworker notes, plaintiff is repeatedly observed to be crying, quite anxious, and having difficulty communicating; she was noted to hold in her feelings and attempt to appear as though she is doing better than she really is (Tr. at 407, 409, 411, 417, 419).

Plaintiff was noted on multiple occasions to be suffering from major depression including tearfulness and hallucinations (Tr. at 397, 417, 427, 434, 437, 441).  "Nyana continues to experience depression several days a week and is often on the verge of tears in my office." (Tr. at 407).  In January 2013, she wore a tank top and Capri pants to an appointment with a social worker (Tr. at 397).  She was noted on another

occasion to be dressed inappropriately (Tr. at 417).  Her attention and concentration were noted to be impaired (Tr. at 437).

Plaintiff said that she was having problems with eating due to not having any teeth but having no way to get dentures (Tr. at 388, 389).  "[D]ue to cognitive confusion and poor insight" a caseworker took plaintiff to have the rest of her teeth pulled and to get dentures (Tr. at 383).

Plaintiff's mood was described as "up and down" or depressed (Tr. at 386, 393). Routinely plaintiff's social workers described her as being "very stressed."  Plaintiff indicated anxiety about where she was living -- at one point her older son rented a house for her and her younger son, but it was in a dangerous neighborhood and plaintiff was afraid to leave the house (Tr. at 393).  She did not want to be ungrateful to her son but worried about her own safety and the safety of her younger son, although she described herself as being blessed to have this rental house (Tr. at 393, 413).

Plaintiff attended group therapy but did not speak during those sessions, although she was noted to be supportive of others (Tr. at 383-388).  She eventually told her caseworker that she kept everything inside because she did not want to complain about her situation (Tr. at 383).

The daughter of plaintiff's friend died, and plaintiff was unable to attend the funeral due to her problems being around crowds (Tr. at 391).  On another occasion plaintiff indicated that she just wanted to be left alone -- her family had been trying to get her to attend a family event and she did not want to go (Tr. at 399).  Plaintiff's social

13

workers routinely referred to plaintiff's problems with isolating herself and her comments that she sometimes felt paranoid around others (Tr. at 403, 405, 413).

Plaintiff's limited intellectual functioning constitutes a severe mental impairment because it inhibits her ability to perform basic work activities including the use of judgment, responding appropriately in usual work related situations, and dealing with changes in a routine work setting, all of which are further impaired by her continued depression, anxiety, and isolation.

In this case, the ALJ completely ignored plaintiff's intellectual limitations. His analysis of plaintiff's mental impairments caused by depression, anxiety, isolation, and hallucinations is not supported by the record. His opinion reads as follows:

> Although she has received some treatment, she has never been noted to have any limitations in her mental health functioning. For example in September 2013, she exhibited fair grooming and hygiene. She was cooperative and maintained good eye contact. She exhibited normal psychomotor activity. She exhibited normal speech and a good mood. She exhibited normal thought content and thought processes. She denied having any perceptual disturbances. She was alert and oriented. She exhibited good insight and judgment. In May 2014, she was again not noted to exhibit any deficits in her mental health functioning.

(Tr. at 10-11).

In support of this finding, the ALJ cited to page 5 of Exhibit 3F (Tr. at 381) and Exhibit 5F (Tr. at 479-481). I have reviewed those medical records and nowhere on those pages is there support for the quotation above. Further, the ALJ's findings in this paragraph are limited to September 2013 and May 2014; however, plaintiff's mental health records span many visits over many months, nearly all of which include

references to plaintiff's depression, her anxiety, her problems communicating, her tearfulness, her isolation, etc.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole does not support the ALJ's finding that plaintiff is not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is granted. It is further

ORDERED that the decision of the Commissioner is reversed. It is further

ORDERED that this case is remanded for an award of benefits.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 30, 2017